**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Greg Branum and Wendy Branum, | ) | |
| | ) | |
| Plaintiffs, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **RE MOTION TO ADD THIRD** |
| vs. | ) | **PARTY DEFENDANT** |
| | ) | |
| Petro-Hunt Corporation, | ) | |
| | ) | Case No. 4:09-cv-035 |
| Defendant. | ) | |

Before the court is defendant Petro-Hunt Corporation's (Petro-Hunt) motion to add plaintiff's former employer, Sanjel (USA), Inc. ("Sanjel") as a third-party defendant.

**I.     BACKGROUND**

Petro-Hunt, an oil and gas exploration and production company, retained Sanjel, a well service company, to perform a "frac job" on one of its wells. The process involves the pumping of material under high pressure into a well to fracture the formation where the well has been drilled in order to stimulate production. Sanjel was one of several companies that Petro-Hunt had used from time to time to perform such work.

The attempt to fracture the formation that is the subject of this action took place on August 30, 2008. It was the third time that Petro-Hunt had retained Sanjel to assist with a frac job on this particular well.

It appears that Sanjel provided much of the labor and equipment to perform the frac job. According to the complaint, plaintiff was a Sanjel employee. His job was to operate a pumper truck used to pump water around the well casing to provide back pressure. During the course of attempting the frac job, an unexpected accumulation of natural gas near plaintiff's truck ignited

1

causing an explosion and flash fire that seriously injured the plaintiff. Exactly how and why the natural gas accumulated, where it did, and who was responsible are disputed.

Also disputed are the respective roles played by Petro-Hunt and Sanjel during the performance of the work. There is evidence, however, that Petro-Hunt's onsite representative, operating from a trailer where the frac job was being monitored, directed the overall sequencing of the frac job after the equipment had been set up by giving instructions to Sanjel's supervisors, who were also located in the trailer and who, in turn, were in radio communication with Sanjel's employees outside the trailer, including the plaintiff. But, what may be disputed is the degree of control exercised by Petro-Hunt over the manner and method in which Sanjel's employees set up the job and operated their equipment.

Plaintiff seeks to hold Petro-Hunt liable under a number of different theories that are discussed in more detail below. Plaintiff has not sued Sanjel, probably because he is receiving worker's compensation benefits from a private carrier, which, presumably, were purchased by Sanjel.

Petro-Hunt's proposed third party complaint seeks implied indemnity and contribution from Sanjel in the event Petro-Hunt is held liable for any fault of Sanjel. The moving papers acknowledged that North Dakota law appears to foreclose Petro-Hunt from being held responsible for any fault of Sanjel, but stated the necessity for the motion is driven by claims in the complaint that appear to seek recovery from Petro-Hunt for the fault of Sanjel and its employees notwithstanding.

In his response to Petro-Hunt's motion, plaintiff stated he was not opposing the motion, but went on to add that he was not seeking to hold Petro-Hunt liable for Sanjel's fault, which, if true,

2

would obviate the necessity for the motion. The problem with the plaintiff's statement, however, was that it was contrary to several claims in the complaint, which impose vicarious liability as a matter of law.

Given the foregoing, the court scheduled a telephonic hearing with the hope the parties would be able to reach a stipulation that would obviate the need to implead Sanjel. Also, the court noted in its order setting the hearing prior decisions of this court, the Eighth Circuit, and the North Dakota Supreme Court that appear to foreclose any possibility of Petro-Hunt being held liable for Sanjel's fault in this case.

During the telephonic hearing, plaintiff's attorney agreed that two of the claims pled in the complaint, which clearly impose vicarious liability, cannot be brought by his client based on the authority referenced by the court. Plaintiff's attorney was unwilling, however, to agree there was no possibility of vicarious liability being imposed upon Petro-Hunt for Sanjel's fault with respect to several of the other claims.

There is no need to postpone resolution of whether Petro-Hunt can be held vicariously liable for Sanjel's fault given that it can be resolved as a matter of law without further factual development. In fact, it likely would be the subject of an immediate motion to dismiss by Sanjel if it was added as a third party defendant.

Because resolution of the issue of vicarious liability in conjunction with Petro-Hunt's motion to implead Sanjel substantially impact plaintiff's claims, the undersigned will make a report and recommendation rather than issue an order. The parties can then address the issue *de novo* with the district judge in the event they disagree.

## II. DISCUSSION

The principal issue here is whether plaintiff can hold Petro-Hunt vicariously liable for any fault of Sanjel. If so, Petro-Hunt *may* have a claim for common law indemnity. If not, then there is no basis for a third party action by Petro-Hunt against Sanjel. Petro-Hunt also mentions contribution, but that is foreclosed in this case by N.D.C.C. § 32-03.2-02, which abolishes joint and several liability except in limited instances that have not been pled by plaintiff. E.g., Moszer v. Witt, 2001 ND 30, ¶ 24, 622 N.W.2d 223; Target Stores v. Automated Maint. Serv., Inc., 492 N.W.2d 899 (N.D.1992).

For the reasons set forth below, it does not appear that Petro-Hunt can be held vicariously liable for Sanjel's fault under any of the claims set forth in the complaint. And, for this reason, impleading Sanjel would be an exercise in futility and Petro-Hunt's motion should be denied. Cf. U.S. ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 822 (8th Cir. 2009) ("Futility is a valid basis for denying leave to amend.").

### A. "Peculiar Risk" (Count V) & "Inherent Danger" (Count VI)

Counts V and VI of the complaint assert claims of "peculiar risk" and "inherent danger" pursuant to Restatement (Second) of Torts ("Restatement of Torts 2d") §§ 416 and 427, respectively. These claims allege nondelegable duties for which vicarious liability can be imposed upon the employer of an independent contractor. However, both the North Dakota Supreme Court and this court have held that these theories of relief do not extend to claims by employees of independent contractors. See, e.g., Olson v. Pennzoil, 943 F.2d 881 (8th Cir. 1991); Ackerman v. Gulf Oil Corp., 555 F. Supp. 93 (D.N.D. 1982); Pechtl v. Conoco, Inc., 1997 ND 161, 567 N.W.2d 813 (Pechtl); Fleck v. ANG Coal Gasification Co., 522 N.W.2d 455 (N.D. 1994) (Fleck). These are the

4

claims that, during the telephonic hearing, plaintiff's attorney acknowledged his clients were foreclosed from pursuing.

**B.    "Retained Control" (Count III)**

Count III asserts a claim of liability based upon a theory of "retained control" pursuant to Restatement of Torts 2d § 414. With respect to this claim, the North Dakota Supreme Court has held:

> The doctrine of retained control does not make the employer vicariously liable for the independent contractor's acts; rather, it creates an independent basis of liability for the employer's failure to exercise retained control with reasonable care.

Iverson v. Bronco Drilling Co., Inc., 667 F. Supp. 2d 1089, 1094-1095 (D.N.D. 2009) (quoting Rogstad v. Dakota Gasification Co., 2001 ND 54, ¶ 16, 623 N.W.2d 382). Consequently, with respect to this claim, Petro-Hunt can only be liable for its percentage share of fault under N.D.C.C. § 32-03.2-02, given that there is no joint and several liability for reasons discussed earlier.

**C.    "Premises Liability" (Count I)**

In Count I, plaintiff alleges a claim of premises liability under Restatement of Torts 2d § 343A. With respect to this claim, the North Dakota Supreme Court appears to have decided in Pechtl that, when a person having control of a premises employs an independent contractor to conduct work and a claim is brought against that person, the more specific provisions of Restatement of Torts 2d §§ 414, 416, and 427 govern with respect to a claim of a failure to provide a safe place to work - at least when the claim is brought by an employee of an independent contractor.

In Pechtl, which also was an oil-field accident case brought by an employee of an independent contractor, the North Dakota Supreme Court upheld the dismissal of the plaintiff's claim under Restatement of Torts 2d § 414 because of insufficient evidence of retained control.

5

Pechtl, 1997 ND 161, at ¶¶ 9-19. The court then went on to address plaintiff's argument that the defendant in that case (Conoco) should be held liable, notwithstanding the court's rejection of the § 414 claim, because it possessed the worksite and had a nondelegable duty to provide a safe environment. The court disposed of the argument by holding that its holding with respect to the § 414 claim controlled. The court stated in relevant part the following:

> [¶ 20] Relying on Ruehl v. Lidgerwood Rural Tel. Co., 23 N.D. 6, 135 N.W. 793 (1912), the Pechtls also contend Conoco had a non-delegable duty regarding conditions at the worksite. They argue Conoco retained exclusive possession and control of the worksite and could not shift its duty to provide a safe workplace to Steier.
> [¶ 21] To the extent the Pechtls' argument is premised upon Conoco's control of the worksite, it is governed by our resolution of the issue of retained control under Section 414. The Pechtls' reliance on Ruehl is also misplaced. In Ruehl, a young child died when he fell into a telephone post hole dug by a person employed by the defendant, a telephone company. In discussing the telephone company's duty, this court said: * * * * [quotation omitted].
> [¶ 22] Ruehl involved the existence of a hazardous condition, an unguarded hole in the ground in which a child fell. Here, the employee of an independent contractor is claiming an injury caused by a hazardous or dangerous jobsite. In Fleck we recently considered a similar claim under Restatement (Second) of Torts §§ 416 and 427. We distinguished between members of the general public injured by worksite negligence and injured employees of an independent contractor, and we held an employer of an independent contractor is not vicariously liable to the independent contractor's employees for inherent dangers or peculiar risks at a jobsite under Sections 416 and 427. To the extent the Pechtls' argument is based upon language in Ruehl about a dangerous condition like a deep pit or well, our decision in Fleck is dispositive of a claim by an employee of the independent contractor.

Id. at ¶¶ 20-22.

But, even if there is a basis for a separate claim of premises liability in this case, the North Dakota courts would not impose vicarious liability upon Petro-Hunt for Sanjel's fault in this case based upon the North Dakota Supreme Court's decision in Fleck, supra. In Fleck, the court recognized the following reasons for not imposing vicarious liability on the person retaining an

6

independent contractor for the contractor's fault when the claim is brought by one of the contractor's employees:

- The primary purpose for imposing vicarious liability is to assure compensation for the injured person. With respect to claims by employees of independent contractors, this purpose is satisfied by the availability of worker's compensation benefits that are the preferred remedy for occupational injuries. Fleck, 522 N.W.2d at 451.

- The employer of the independent contractor should be entitled to the protection of the exclusive remedy of the workers compensation laws because the employer has likely paid a share of the premiums that are necessarily included in the contract price for the employment of the independent contractor. Id.

- The incongruous result of an employer of an independent contractor being subjected to greater liability for the performance of dangerous work if it employs an independent contractor instead of using its own workforce, and the negative consequences this could have on the general welfare to the extent it may encourage an employer to use its own unskilled, untrained employees to perform dangerous work in lieu of an experienced independent contractor with better trained employees. Id. at 452.

- Employees of an independent contractor are generally more cognizant of the dangers at a worksite and are better able to protect themselves than members of the general public. Id. at 453.

- Permitting recovery for vicarious liability by an employee of an independent contractor may result in a double recovery for the injured employee to the extent that

- the employee has been paid workers compensation benefits and is not required to repay them. Id.

- The acceptance of the workers compensation benefits by the injured employee operates, essentially, as a release of any fault of the independent contractor thereby releasing also the vicarious liability of the employer of the independent contractor, much the same as the court held in Horejsi v. Anderson, 353 N.W.2d 316, 318 (N.D. 1984) that a release of a servant releases the master for the fault of the servant. Id. at 453-454.

While the court's discussion in Fleck was limited to the applicability of Restatement of Torts 2d §§ 416 and 427, the same reasoning applies to any claim for premises liability that goes beyond holding the owner of the premises liable for its fault and imposes vicarious liability for the acts of an independent contractor.

### D. "Abnormally dangerous activity" (Count IV)

Plaintiff alleges in Count IV a claim of abnormally dangerous activity pursuant to Restatement of Torts 2d §§ 519 and 520. North Dakota has not yet adopted a claim premised upon abnormally dangerous activity. See, e.g., Mehl v. Canadian Pacific Ry., Ltd., 417 F. Supp. 2d 1104, 1118 (D.N.D. 2006). But, even if there is such a claim under North Dakota law, the North Dakota courts would either (1) not allow the claim when it is brought by an injured employee of an independent contractor for the same reasons that the North Dakota courts have not permitted claims under Restatement §§ 416 and 427, see, e.g., Shaffer v. Alter Trading Corp., No. 08-3006, 2009 WL 1393286, *7 (C.D. Ill. May 15, 2009) (no claim as a matter of law by an employee of an independent contractor involved in the abnormally dangerous activity and citing other authority), or (2) would

8

allow the claim but not impose vicarious liability for the fault of the independent contractor when the claim is brought by one of the contractor's employees for the reasons articulated in Fleck.[1]

### E. "Special Relationship" (Count VIII)

Plaintiff alleges in Count VIII that, by "exercising input and/or control over the work of Sanjel Corporation and Greg Branum," Petro-Hunt had a "special relationship" with plaintiff. A search of North Dakota law, however, discloses no such claim for relief based upon what has been pled.

In fact, plaintiff alleges in ¶ VI of the "general allegations" applying to all claims that Petro-Hunt retained Sanjel and plaintiff is a Sanjel employee. When these allegations are considered together with those in Count VIII, the claim of "special relationship" amounts in substance to one of "retained control" under § 414 addressed earlier, which does not impose vicarious liability. Further, even if there was a claim of "special relationship," the policy reasons expressed in Fleck would not permit the imposition of vicarious liability upon Petro-Hunt for any fault of Sanjel.

### F. "Negligence" (Count II), "Res Ipsa Loquitur" (Count VII), & "Loss of Consortium" (Count IX)

The remaining claims also do not impose vicarious liability. Obviously, the simple claim of negligence in Count II imposes no such liability based on the authority previously cited. The doctrine of *res ipsa loquitur* pled as Count VII is an evidentiary rule and not a substantive claim under North Dakota law. E.g., Robert v. Aircraft Inv. Co., Inc., 1998 ND 62, ¶ 7, 575 N.W.2d 672.

---

[1] In terms of the second possibility, there would not be a problem in comparing fault in imposing strict liability on the person for whose benefit the abnormally dangerous activity is conducted, but not vicarious liability for the acts of an independent contractor, since N.D.C.C. § 32-03.2-02 authorizes the comparison of different kinds of fault, including "absolute liability."
   All of this may be academic since it appears doubtful that the activity in this case was "abnormally" dangerous given the prevalence of oil-well drilling and the use of enhanced recovery techniques, even if dangerous, and the importance of oil and gas as an energy source. Cf. Wirth v. Mayrath Indus., Inc., 278 N.W.2d 789 (N.D. 1979).

Finally, the claim for loss of consortium in Count IX, although distinct from the other claims, does not create new substantive liability. Rather, it derives from and is dependent upon the other. See, e.g., Sime v. Tvenge Associates Architects & Planners, P.C., 488 N.W.2d 606, 610-611 (N.D. 1992).

### G. "Agency" and "Borrowed Servant"

During the telephonic hearing, plaintiff's attorney made reference to what he believes are two potential theories of relief that may not be foreclosed by the North Dakota Supreme Court's decision in Pechtl in terms of imposing vicarious liability for Sanjel's fault, *i.e.*, "agency" and "borrowed servant." It is not clear, however, that plaintiff has pled such claims. Nevertheless, they would be of no help in this case for two reasons.

First, in all likelihood, the North Dakota courts would conclude based upon Fleck (including its reference to Horejsi v. Anderson) that plaintiff's acceptance of worker's compensation benefits released any claims against Sanjel and Sanjel's other employees as a matter of law and thereby eliminated the possibility of any vicarious liability on the part of Petro-Hunt. Fleck, 522 N.W.2d at 453-454.

Second, it appears plain from the evidence submitted so far that plaintiff was an employee of Sanjel and that Sanjel was an independent contractor. While the retention of control over the activity of Sanjel and its employees may impose liability under Restatement of Torts 2d § 414 for any fault of Petro-Hunt, it does not by itself make Sanjel and its employees agents or employees of Petro-Hunt - at least not in a sense that would allow the plaintiff to avoid the specially-crafted rules

10

set forth in Restatement of Torts 2d §§ 414, 416, & 427 for when an employer of an independent contractor should be held liable and for who's at fault. See Pechtl, 1997 ND 161, at ¶ 24.[2]

## III. RECOMMENDATION

Based on the foregoing, it hereby **RECOMMENDED** that Petro-Hunt's motion to add Sanjel as a third party defendant (Docket No. 13) be **DENIED**.[3]

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 15th day of March, 2010.

> /s/ Charles S. Miller, Jr.
> Charles S. Miller, Jr.
> United States Magistrate Judge

---

[2] In fact, the claim of "borrowed servant" often comes from the other direction. That is, it is the employer of the "borrowed servant" (in this case Petro-Hunt according to the plaintiff's theory) who is the one making the claim of "borrowed servant" in an attempt to avoid *all* liability, including its own, arguing that the borrowed servant's exclusive remedy is worker's compensation for any fault of his "employer" and his co-employees. See, e.g., Lundstrom v. Maguire Tank, Inc., 509 F.3d 864, 868-869 (8th Cir. 2007).

[3] Given what is pled in the motion and the proposed third party complaint, the denial of the motion would not foreclose a later motion to implead Sanjel on some other theory if the facts warranted, such as express contractual indemnity or failure to procure insurance.